Good morning, Your Honors. May it please the Court, Malia Huq on behalf of the Petitioner. In this case, the Board denied the Petitioner's applications for asylum, withholding of removal, and protection under the Convention against Torture because they found that even if Petitioner was credible, the harm that he faced in India did not occur on accountable protected ground. Now, because the Board, in coming to this finding, did not address the issue of Petitioner's credibility, this Court, Petitioner submits that this Court should accept Petitioner's testimony as true in reviewing the Board's decision. Petitioner submits that the Board's nexus finding in this case is not supported by substantial evidence. In fact, the record compels the conclusion that the harm that he faced in India occurred, at least in part, on account of a protected ground, namely imputed political opinion. Because this case is not governed by the real ID, Petitioner doesn't have to show that an imputed political opinion was a central reason for why he was persecuted in India. But what evidence is there that the police who are the abusers knew anything about his political opinion? Well, Your Honor, if we look at the factual circumstances of the case, the Petitioner was found in the middle of a field with men who appeared to be Sikh. We were talking about India and Punjab in 1994. Were they of interest because they appeared to be Sikh or because they appeared to be part of a terrorist group? Well, Your Honor, according to Petitioner's testimony, the police clearly believed that these men were terrorists. Now, how can he testify as to what their belief was? Because, Your Honor, when they came to his house before they took him to the fields, they identified themselves as members of Bhabra Khalsa, and this was a group at the time who, in militant fashion, was trying to get a Sikh separatist state. So, therefore, Petitioner knew, clearly, what... Well, Petitioner knew. The question is, what did the police know? What was the reason for the abuse? Yes, Your Honor. Your Honor, the police would know, or at least would assume, that these men that they are finding fleeing in the middle of the night in a field and they all appear to be Sikh, they assume that these men were Sikh separatists or are involved in some sort of militancy or some sort of action such as that. They did not know for sure. At least in the record, we don't know what the police knew for sure. They were trying to find out from Petitioner. However, the fact that they assumed that these men were terrorists and then were trying to get Petitioner to give them more information, clearly shows that they were imputing the opinion of Sikh separatism onto Petitioner. Why does it show that? It seems to be more likely, or at least as likely, that it shows that the police thought that your client had information because he was associated with people who were part of a terrorist group. That's a logical thing for police to investigate. Terrorist group is the key phrase there. Sikh is not the key phrase. Any kind of terrorist group would be a proper subject of investigation for the police. I'm not sure how I see the political opinion comes into this at all. Your Honor, the Petitioner would not be expected to have information about this terrorist group. Respectfully, I do think that the issue that they were all Sikh does matter in this case. The fact that Petitioner would not be expected to have this information unless he was suspected of being part of the group. They picked him up. They were together. They didn't have to suspect he was part of the group because they thought your client was Sikh. They could suspect that because they were picked up together. Or your client was arrested as the others fled, but they were seen to be or believed to be together. Why isn't that, as part of a logical investigation by the police, the reason for the police's action as opposed to any inference they may have drawn with regard to your client's particular political views? Your Honor, in his declaration, Petitioner does say that the police accused me of being part of the terrorists and were beating me because of that. That seems to be it. Part of the terrorists. If that's the motivation, isn't that what the BIA concluded? The motivation was that he was perceived as being part of the terrorist group, not that he was believed to have an opinion in support of a separate Sikh state. Your Honor, if he is suspected of being part of these Sikh separatists, then clearly the political opinion of these Sikh separatists are being imputed to him. But taking up my colleague's questioning, it's my understanding the police never even inquired into his political views. They only inquired into the terrorists. Is that correct? Yes, Your Honor, but... And so if that is correct, then how do I distinguish your case from Sharma? Because in Sharma v. Holder, the alien failed to meet his burden of proving imputed political opinion because the police never inquired into his political views, and they were interested in something else. That case, his father. This case, terrorists. Seems to me we're stuck with Sharma. Well, Your Honor, for the imputed political opinion doctrine, the petitioner's own political views are not at issue. It's what the police falsely believed. Well, but that's the problem. They only inquire after the terrorists. They don't inquire into his own beliefs. They don't inquire into politics at all. Only as to terrorists. So Sharma seems to be right on point. Well, Your Honor, also in Sharma, the burden that the petitioner had in that case was much higher. He had to show that the political opinion, imputed political opinion, was a central reason. In this case, if the petitioner can show that an imputed political opinion was at least in part why he was being persecuted, then that is sufficient to meet his burden in this particular case. Are you asking us to reweigh the evidence here? Because if you're asking us to reweigh the evidence, don't you really believe the standard of review prevents that? Your Honor, I'm not requesting that this Court reweigh the evidence, but what I'm saying is that the Board did not have substantial evidence itself to come to this conclusion. And this is also because in the case of, I believe, Ratnam, the INS, says that if torture is used, even if it has some legitimate purpose, if torture is used in trying to get information for intelligence-gathering purposes, there can still be an imputed political opinion in that situation. Furthermore, the cases of Singh v. Ilkertz, the two cases in 1995, the facts are remarkably similar in that situation. And in those cases, this Court found that there was imputed political opinion. Neither one of those petitioners in those cases were politically active. If, in fact, I don't find any past persecution in this particular matter, because it doesn't pertain to the protected ground, what is your best evidence of future persecution? Your Honor, the petitioner submitted affidavits. What's your best evidence? Not what affidavits he had, what it is. Give me the best evidence of future persecution. I mean, I see a guy who has no political associations, no evidence that after 16 years the local police will even remember who he is, no evidence the Indian government wants him. What's your best evidence of future persecution? Your Honor, the best evidence would be that the fact that he, the police, would have records of the fact that this man was questioned and held for five days. He doesn't even recall if they took his fingerprints or took his photograph, does he? I'm not sure, Your Honor. But I seem to recall that from the record. If that's the case, it suggests they weren't expecting to be pursuing him in the future Well, Your Honor, because the fact that the local police in India would have his identity, would have his record, and if he was to, let's say, even go in other parts of India, he would have to get an ID made. He certainly could not be able to go and live in his local village because the police would know that we arrested this man and that this man was, according to them, involved in separatist activities. And clearly, him living abroad for this many years, they would be interested in what his activities were. You would confirm, would you not, that he was released immediately after confirming that he was not a terrorist? Your Honor, they held him for five days. Was he released as soon as they knew he was not a terrorist? Would you answer the question? Was he released as soon as they confirmed he was not a terrorist? I believe so, Your Honor. And the country conditions have improved for the Sikhs since he was arrested. Would you agree with that? Yes, Your Honor. So if that's the case, even if you do have past persecution, don't you fail on future persecution? Your Honor, my time is up. I'm sorry, even if I do, well, Your Honor, if he does have past persecution, then he's entitled to the presumption that he would be persecuted in the future. And then it is the government's burden to show that India, the circumstances as to him have improved. Okay, thank you. We'll hear from counsel for the Attorney General. May it please the Court, my name is Ari Nazaroff, and I'm an attorney with the United States Department of Justice, Office of Immigration and Litigation, and I represent the Attorney General this morning. At this point, Your Honor, if this bench has no further questions, we're going to rest on our briefs. I have no other questions. Do you have strong objections to allowing a voluntary departure here? The IJ permitted a voluntary departure, and BIA just reversed simply because the relief wasn't asked for. Well, that request for relief was not before the Board, so it's really not before this Court. But, Your Honor, I can't really speak to that. That's something ICE would handle, which is within the Department of Homeland Security. But the Board reversed the IJ. Okay, I see, Your Honor. Again, I'm afraid I can't really speak to that issue because that falls within the Department of Homeland Security. I'm happy to brief that if that's what this Court would request. Thank you.
judges: Clifton, Nr Smith, Cjj Korman (Edny), Dj